**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

**BARBARA HARRIS**                                                                          **PLAINTIFF**

vs.                                              **1:05-CV-00035-WRW**

**UNUM LIFE INSURANCE COMPANY
OF AMERICA and WHITE RIVER
HEALTH SYSTEM**                                                                         **DEFENDANTS**

**ORDER**

Pending are the parties cross-Motions for Summary Judgment (Doc. Nos. 11, 14). Each party has responded to the other's motion.[1] Plaintiff asserts that Defendant breached its fiduciary duty when it denied Plaintiff's LTD claims based on determinations of "their own stable of physicians and vocational 'experts.'"[2]

Based on the findings of fact and conclusions of law below, Defendant's Motion for Summary Judgment is GRANTED (Doc. No. 10) and Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that

---

[1] Doc. Nos. 16, 20, 21.

[2] Doc. No. 15

[3] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[5]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6]  This court must view the facts in the light most favorable to the party opposing the motion.[7]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

---

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. M.K.-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

## II.   BACKGROUND[10]

### A.   Plaintiff's Medical Issues

Plaintiff worked as an LPN for Stone County Medical Center, a division of White River Health System, and was a participant in her employer's long-term disability plan.[11]

Unum Life Insurance Company of America ("UNUM") "insured White River Health System's long-term disability plan through a group insurance policy with an effective date of January 1, 2000."[12] Unum has "discretionary authority to determine eligibility for benefits and interpret the terms and provisions of the policy."[13]

Plaintiff "began having health problems following a motor vehicle accident while performing her duties as a home health nurse in approximately [October] of 2001."[14]  After the accident, Plaintiff had "problems with her lower back, left side of her head, left shoulder and left hip."[15]  "She also already had problems with Systemic Lupus and Fibromyalgia."[16]  Plaintiff contends that she "became totally and permanently disabled as a result of an injury on the job and remains totally and permanently disabled."[17]

---

[10]Doc. No. 8 is the Administrative Record ("AR").  References to the Administrative Record in this Order will be identified based on the page number in the AR, *e.g.*, AR at 0020.

[11]Doc. Nos. 1, 11.

[12]Doc. No. 12.

[13]*Id.*

[14]Doc. No. 1.  Although Plaintiff's Motion and Complaint assert that the accident occurred in November, 2001, the notes by Plaintiff in the AR indicate that the accident occurred in October, 2001.

[15]Doc. No. 1.

[16]Doc. No. 15.

[17]Doc. No. 1.

In the disability claim Plaintiff submitted to Unum, she asserted that she suffered from: depression; injuries sustained in the October 29, 2001; accident; fibromyalgia; osteoarthritis; carpal tunnel in her right hand; sleep apnea; 90% hearing loss in her left ear; and back, neck, and shoulder pain.[18]  Plaintiff claimed that she had been unable to work since October 29, 2001, because of these conditions.[19]  Plaintiff was declared disabled under the Social Security Administration rules on November 29, 2001.[20]  Plaintiff last worked on December 7, 2001, and her date of disability was December 8, 2001.[21]  Unum paid benefits from June 6, 2002, through June 5, 2004.[22]

**B.     Disabled Under the Policy**

On March 23, 2004, Unum's physician, Dr. Randall, reviewed the medical records and determined that the systemic lupus "appears to be satisfactorily controlled" and neither the fibromyalgia nor the systemic lupus "are totally disabling."[23]  He also noted a lack of evidence supporting a conclusion that Plaintiff's lower back pain "resulted in total disability." Unum recognized that Plaintiff's "reasonable medical restrictions and limitations are no prolonged walking or frequent climbing, no lifting over 20 pounds, and no repetitive or prolonged power gripping."[24]

---

[18] AR at 0019.

[19] *Id.*

[20] AR at 0671.

[21] AR at 0012.

[22] AR at 0850.

[23] AR at 0747-0748.

[24] AR at 0823.

According to UNUM's long-term disability insurance policy:

> You are disabled when UNUM determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> - you have a 20% or more loss in your **indexed monthly earnings** due tot he same sickness or injury.
>
> After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.[25]

In July, 2004, Unum had its Senior Vocation Rehabilitation Consultant, Ms. Lillia Rascon, conduct a vocational analysis.[26] Ms. Rascon concluded that "[a]ccording to the referral information, gainful employment is $944.18/month." She also determined that Plaintiff's restrictions permitted her to work as a telephone operator, receptionist, or information clerk -- all of which had monthly wages in excess of the "gainful" amount.[27]

On October 25, 2004 letter, Unum informed Plaintiff that it recognized three primary medical conditions in the records: systemic lupus; fibromyalgia; and low back pain, and that, based on the records, none was totally disabling.[28] Unum determined that although Plaintiff's limitations and restrictions prevented her from continuing with her current occupation, they did not restrict her from all gainful occupations. Accordingly, Plaintiff did "not meet the contractual

---

[25]AR at 0067 (emphasis in original).

[26]Doc. No. 11.  See AR at 0801-07.

[27]AR at 0802.

[28]AR at 0822-0823.

definition of disability beyond 24 months" and benefits would not longer be paid after that period.[29]

Unum allowed Plaintiff 30 days to provide additional information to support her claim for disability, but Plaintiff provided no additional information.[30] When Plaintiff provided no additional medical support, Unum informed Plaintiff about the appeals process in a November 30, 2004, letter.[31]  In January, 2005, Plaintiff informed Unum that she wanted to appeal.[32]

While on appeal, Unum had an independent physician, Dr. James Wilson, review the medical records.  He noted the lack of medical records after June 5, 2004.  Dr. Wilson also noted that Plaintiff "does indeed have both fibromyalgia and osteoarthiritis," but systemic lupus "has not been diagnosed by her rheumatologist" and "[t]here is certainly no evidence in these records" to support a diagnosis of systemic lupus.[33]  Dr. Wilson agreed that the lifting, walking, climbing, and gripping limitations were reasonable, but found no documentation to support Plaintiff's treating physician Dr. Simpson's conclusion that Plaintiff was "unable to work at all" based on her lower back pain.[34]

---

[29] AR at 0824.

[30] AR at 0830, 0838.

[31] AR at 0838-39.

[32] AR at 0847.

[33] AR at 0872-0873.

[34] AR at 0872.

In a March 3, 2005, letter, Unum informed Dr. Simpson of its findings, and asked for his opinion.[35]  When Dr. Simpson did not respond by March 24, 2005,[36] Unum concluded the appeal and upheld its earlier decision.  On March 26, 2005, Unum informed Plaintiff that it had concluded its appellate review and affirmed the decision to deny long term disability benefits.[37]

## III. DISCUSSION

### A. Standard of Review

Under ERISA, "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . . ."[38] A denial of benefits under a plan governed by ERISA is to be reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[39] When an ERISA plan grants discretion -- which is the case here[40] -- courts review a plan administrator's decision under an abuse of discretion standard.[41]  A plan administrator's decision will be reversed under an abuse of discretion standard "'only if it is arbitrary and capricious.'"[42]

---

[35]AR at 0892-94.

[36]AR at 0895.

[37]AR at 0899.

[38]29 U.S.C. § 1132(a)(1)(B).

[39]*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[40]The Plan gave Unum "discretionary authority to determine eligibility for benefits and interpret the terms and provisions of the policy."  See Doc. No. 13.

[41]*Jessup v. Alcoa*, 481 F.3d 1004, 1006 (8th Cir. 2007).

[42]*Groves v. Metro. Life Ins. Co*., 438 F.3d 872, 874 (8th Cir. 2007) (quoting *Herbert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004)).

When a claimant shows that a "serious procedural irregularity caused a serious breach of the administrator's fiduciary duty," courts use "a sliding scale approach somewhere between abuse of discretion and *de novo*."[43] Additionally, the Supreme Court recently held that a conflict of interest exists when a plan administrator both determines eligibility and pays a claim,[44] and that courts should consider the conflict of interest as a factor when reviewing an administrator's decision under the abuse of discretion standard.[45]

Plaintiff asserts that the *de novo* review standard -- rather than abuse of discretion -- should be used in this case because a conflict of interest exists -- Unum determines both the eligibility and pays the claims. Additionally, Plaintiff contends that a *de novo* review is warranted because "Unum has long been seen as abusive toward its beneficiaries . . . ."[46] However, this conflict is to be considered only "as a factor in determining whether there is an abuse of discretion."[47] Regardless, Plaintiff's claims fail even on a *de novo* review of the record.

**B.   Review of Record.**

During the time frame covering the issues in this case, Plaintiff's treating physicians were Dr. Robert Brewer, a rheumatologist, and Dr. Ron Simpson, a family practice physician.[48] In a January 17, 2003, "Attending Physician's Statement," Dr. Simpson diagnosed Plaintiff with systematic lupus and fibromyositis; he listed her limitation and restrictions as: no significant

---

[43]*Hamilton v. Standard Ins. Co*., 516 F.3d 1069, 1073 (8th Cir. 2008).

[44]*Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008).

[45]*Id.* at 2348-50.

[46]Doc. No. 21.

[47]*Glenn*, 128 S. Ct. at 2350.

[48]AR at 0718.

lifting, bending, squatting, and no continuous, repetitive fine motor activity.[49] In late 2003 and early 2004, Dr. Brewer determined that Plaintiff's "rheumatologic problems are doing fairly well at this time"[50] and "appear to be in reasonably good control."[51]

Plaintiff saw Dr. Simpson on February 6, 2004, and reported a "3 day history of left low back and buttock pain" that developed after "quite a bit of shopping" in Little Rock.[52] Ten days later, Dr. Simpson determined "low back pain" to be Plaintiff's "primary diagnosis" and declared that Plaintiff was "unable to work at all."[53] Dr. Simpson noted that Plaintiff could occasionally lift 11-20 lbs and climb stairs and frequently lift 1-10 lbs and reach above shoulders.[54] He also noted that Plaintiff could do no sedentary activity -- which was defined as "10 lbs maximum lifting or carrying articles. Walking/standing on occasion. Sitting 6/8 hours."[55] Dr. Randall, Unum's physician, found that the lifting restriction of 20 lbs and occasional stair climbing contradicted the "no work" restriction.[56]

Plaintiff underwent an MRI that revealed that she had "a small subligamentous disk bulge at the L4-L5 level," but the bulge caused "no significant root or thecal sac compression."[57] About a month later, Dr. Simpson determined that Plaintiff was "quite a bit better" and noted

---

[49]AR at 0023.

[50]AR at 0728.

[51]AR at 0729.

[52]AR at 0772.

[53]AR at 0712.

[54]AR at 0714.

[55]AR at 0715.

[56]AR at 0748.

[57]AR at 0770.

only "mild paraspinal tenderness in the lumbar region."[58] In early May, 2004, Dr. Brewer determined that Plaintiff's lower back pain "has spontaneously improved."[59] He also noted that "after two or three weeks," the lower back issues "almost completely resolved."[60]

After Unum's medical department -- which includes nurses and physicians -- reviewed Plaintiff's medical file, it determined that the limitation and restrictions listed by Dr. Simpson -- no significant lifting, bending, squatting, and no continuous, repetitive fine motor activity -- appeared to be reasonable and supported by the medical record.[61] However, Unum's medical department concluded that the "no work capacity is not supported" by the record.[62]

Based on a *de novo* review of the record, I find that Unum's decision was supported by the medical records in the Administrative Record. Specifically, Unum noted the lack of objective evidence supporting full disability in the record. In fact, all the evidence after the conclusory statement that Plaintiff was "unable to work at all,"[63] supports Unum's conclusion -- that Plaintiff is able to perform the duties of a "gainful occupation," with some limitations and restrictions. Notably, the same doctor that ruled Plaintiff "unable to work at all" because of back pain, found that her back pain was "quite a bit better" with only "mild tenderness" a month later.[64] Plaintiff's other treating physician found that the back pain "spontaneously improved"

---

[58] AR at 0771.

[59] AR at 0778.

[60] *Id.*

[61] AR at 0745.

[62] AR at 0746, 0748.

[63] AR at 0712.

[64] AR at 0771.

and was "almost completely resolved."[65] Additionally, the MRI showed that the disk bulge caused "no significant root or thecal sac compression."[66]

Based on the evidence in the Administrative Record, it was appropriate for Unum to reject Plaintiff's physician's original conclusion that Plaintiff's lower back pain rendered her "unable to work at all"[67] -- especially since this determination was directly contradicted by the improvements noted in all the subsequent medical records.  The Administrative Record supports Defendant's position that Plaintiff is able to perform the duties of a "gainful occupation," with restrictions and conditions.

## CONCLUSION

Whether reviewed *de novo* or for an abuse of discretion, Unum's determination that Plaintiff was not disabled under the term of the Plan is supported by the record.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED (Doc. No. 10) and Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED.

IT IS SO ORDERED this 27th day of January, 2009.


/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[65] AR at 0778.

[66] AR at 0770.

[67] AR at 0872.